THE BOULTON CARBON COMPANY v. F. M. MILLS.

1. Corporations: PAYMENT FOR STOCK IN OVERVALUED PROPERTY: LIABILITY OF STOCKHOLDERS: FRAUD: EVIDENCE. Defendant was one of the organizers and promoters of a corporation which issued a large quantity of its paid-up stock to B., P. and V., three other organizers and promoters, in consideration of property taken at a gross overvaluation, and upon an understanding that those of them who then agreed to take that stock from B., P. and V. should have it at thirty-three and one-third cents on the dollar. Defendant knew of, and was a party to, these transactions, and he took from B., P. and V. fifteen shares of that stock, of the face value of fifteen hundred dollars, for which he paid only five hundred dollars. He also took ten other shares of the company's paid-up stock as an inducement to act as the company's president, but not as compensation; and for these he paid nothing.  *Held*—

    (1) That he was liable, under section 1082 of the Code, to a creditor of the company for the difference between the par value of his shares and the amount which he paid therefor. (Compare *Osgood v. King*, 42 Iowa, 478; *Jackson v. Traer*, 64 Iowa, 469.)

    (2) That evidence was properly admitted to show that in this fraudulent manner defendant procured twenty-five hundred dollars in stock, upon the payment of only five hundred dollars, though fraud was not pleaded.

    (3) That evidence offered by defendant to show that the property taken by the company was believed to be worth the amount for which it was taken was properly excluded, because the conceded facts were to the contrary.

2. ———: LIABILITY OF STOCKHOLDERS FOR UNPAID STOCK: RIGHT TO SET-OFF. When a stockholder is sued by the corporation for balances due upon stock, he may set off the indebtedness of the company to him; but when sued by a creditor of the corporation to subject such unpaid balances to the satisfaction of the creditor's claim, he cannot set off the corporation's indebtedness to him, though it is in the form of a judgment. (*Singer v. Given*, 61 Iowa, 93, *followed.*)

*Appeal from Polk District Court.*—Hon. W. F. Conrad, Judge.

Filed, October 14, 1889.

On the twenty-fourth day of September, 1885, the plaintiff recovered a judgment against a corporation, known as the "Pilcher Capital City Electric Light Company," for three hundred and sixty-one dollars. Execution was issued upon said judgment, and it was returned unsatisfied, because the corporation had no property upon which to make a levy. This action was brought to recover of the defendant, F. M. Mills, the amount of the judgment, interest and costs; and the right of action is based upon the averment that said defendant was one of the promoters, officers and stockholders of said corporation, and the owner of twenty-five shares of one hundred dollars each of the capital stock of said company, for which he has never paid, and that he is now indebted to said corporation on account of said stock in the sum of twenty-five hundred dollars. The defendant denied the alleged indebtedness. There was a trial to the court without a jury, and a judgment was rendered for the plaintiff. Defendant appeals.

*Finkbine & McClelland,* for appellant.

*C. C. & C. L. Nourse,* for appellee.

Rothrock, J.—The corporation known as the "Pilcher Capital City Electric Light Company" was organized in September, 1883. The articles of incorporation, among other things, contained the following: "The capital stock shall be one hundred-thousand dollars, divided into shares of one hundred dollars each, which may be issued as full payment for patent rights, licenses, privileges, lands, machinery, and any and all valuable things that may be necessary for the promotion and development of the business of the corporation; and when said stock is issued it shall be fully paid

up and non-assessable. All purchases of the above-mentioned items shall be made under the direction of the board of directors, The certificates of stock shall be signed by the president and secretary. The private property of the stockholders of this corporation shall not in any manner be liable for any debts or liabilities incurred by it, nor for any indebtedness or liability resulting therefrom.

The defendant was one of the original incorporators, and was elected and served as president of the company. At a meeting of the directors of the company, held three days after the articles of incorporation were filed for record, the following resolution was adopted: "That for and in the consideration of a bill of sale of the electric light machinery now in Tyrrell's Mill, wire, lamps, etc., also the business patronage from October 1, 1883, of said machinery, including the good-will, rights and city privileges, etc., belonging now, and all the electric light grants and privileges for Des Moines, Iowa, only, that may hereafter belong to C. T. Bowen, R. H. Pilcher, W. R. Vaughn, F. M. Mills, P. V. Carey, W. D. Lucas, B. F. Allen, J. W. Rowen, C. W. Reed, J. C. Painter, P. H. Bristow, George Harney, George Conradi, D. A. Tyrrell and Alex. Lindsey. Said bill of sale and transfer of the above property is to be to the Pilcher Capital City Electric Light Company of Des Moines, Iowa, and the secretary of said company is hereby ordered to pay the above gentlemen, as their interests may appear in said company, the sum of one hundred thousand dollars for the same, and this resolution shall be his receipt for so doing. Bill of sale accepted, and resolution adopted, on motion of director Painter."

The property named in the above resolution was owned by the incorporators, Bowen, Pilcher and Vaughn, before and at the time of the incorporation. Fifty thousand dollars of the stock was issued and delivered to the incorporators, the greater part of which was in favor of Bowen, Pilcher and Vaughn. It is probably true, as claimed by appellant, that all of the

fifty thousand dollars of stock was issued in the first instance to the three parties above named. But the defendant subscribed for fifteen shares of stock, and he received his certificates therefor from the company by direction of Bowen, Pilcher and Vaughn. The other remaining fifty thousand dollars of stock was issued to a trustee for all the stockholders. The company did not receive any money for any of the stock issued, excepting possibly for three shares. Practically all its resources consisted of the electric light plant transferred to it by Bowen, Pilcher and Vaughn.

The district court found as a fact that the property was taken by the corporation at a gross overvaluation; that said property was worth less than one-third of the par value of the stock. This finding is fully supported by the evidence. The fact is made plain by the subsequent history of the corporation. The defendant as president, and others as directors, undertook to carry on the enterprise. It did not pay running expenses, because indebted. The defendant endorsed for it, brought an action against it, had a receiver appointed, and the property sold; the proceeds of the sale being some seven hundred dollars. It is true that the property had very materially depreciated in value before it was sold. But there is no claim now made that it was ever at any time worth the sum of fifty thousand dollars. Indeed, the defendant concedes that he paid but five hundred dollars for the fifteen hundred dollars of stock issued to him, and he testified as a witness upon the trial that all of the stockholders, who subscribed when he did, paid thirty-three per cent. of the par value for the stock. It must be conceded that all of the original stockholders knew that this property was sold to the corporation at a gross overvaluation, or, rather, that it was taken at more than three times its value. This was manifest to all of them, because it was part of the original agreement or understanding that they should have their stock at thirty-three and one-third per cent. of its par value. It makes no difference in their rights and obligations that the stock was issued in

the▸first instance in a block to Bowen, Pilcher and Vaughn, and then reissued to the defendant and others. The undisputed fact remains that the defendant was an original subscriber for fifteen shares of the par value of fifteen hundred dollars, and he admits that he has paid but five hundred dollars therefor. The court below was fully warranted by the evidence in finding that the stock held by the defendant was never paid for in any other way than by the transfer of the said property at less than one-third of the par value of the stock, and that the defendant well knew this to be a fact. Indeed, the answer of the defendant, upon which the cause was tried, expressly states that the electric plant was taken by the company at the estimated value of $16,666.66, and that the defendant subscribed for the stock of the company with the understanding and agreement that the stock should be issued as fully paid up and non-assessable, and paid for at the rate of thirty-three and one-third per cent. of the nominal par value. In addition to this, said Vaughn caused ten shares of full-paid stock to be issued to the defendant as an inducement to him to accept the presidency of the corporation. This was not in payment for official services rendered or to be rendered. The defendant paid nothing therefor. It appears to have been a mere gratuity. The organization of the corporation, and the per cent. to be paid for the stock, and the issuance and acceptance of the stock, all appear to have been parts of one transaction, and the court might well have found, as it no doubt did, that the issuance of the stock to the several parties was the same as if Vaughn, Bowen and Pilcher had not been intermediate parties in the enterprise.

It is insisted in argument for appellant that all the evidence tending to show fraud in the organization of the corporation and the issuance of the stock was incompetent, because fraud was not pleaded in the petition. But under the facts of the case this was not necessary. The evidence shows without conflict that the defendant received twenty-five hundred dollars in stock, for which he paid but five hundred dollars. And evidence offered

The Boulton Carbon Co. v. Mills.

by defendant tending to show that the plant was believed to be worth fifty thousand dollars was properly excluded. It could not be allowed to have the effect of rebutting the conceded facts. This is all we deem it necessary to say in regard to the rulings of the court upon the admission and exclusion of evidence. And we may say, in brief, that under the facts the defendant, being one of the organizers and promoters of the corporation, is liable to creditors of the corporation for the difference between the par value of the stock and what he actually paid for it. Code, sec. 1082; *Osgood v. King*, 42 Iowa, 478; *Jackson v. Traer*, 64 Iowa, 469; *Sawyer v. Hoag*, 17 Wall. 610.

In Taylor's Corporations, section 545, in speaking of payment for stock in property, the author says: "If the property received is grossly unequal in value to the par value of the shares, the shareholder who received the shares originally, or his subsequent transferee with notice of the circumstances, may be compelled to make up the difference in value in a suit brought by or on behalf of the persons injured thereby;" citing *Bailey v. Pittsburg & C. Gas, etc., Co.*, 69 Pa. St. 334, and *Boynton v. Hatch*, 47 N. Y. 225. Under the rule of these cases, if the defendant's claim be true, that he took his shares of stock from Vaughn as full-paid shares, his liability would be the same as that of Vaughn, because he knew the circumstances under which it was issued.

II. There remains one other question necessary to be considered. The court found as a fact that the corporation was indebted to the defendant in the sum of $2,379,89, the greater part of which is in judgment against the corporation. The defendant insists that he has the right to set this off against his unpaid subscription, and the question is, has the defendant the right to plead the indebtedness of the corporation to him in defense of the claim of the plaintiff, who is a creditor of the corporation? It was held in *Singer v. Given*, 61 Iowa, 93, that when a subscriber to the capital stock of a corporation is sought to be held on a judgment against

the corporation to the amount of his unpaid subscription he cannot set off against such judgment what the corporation may owe him for services, rent of property, etc. That case seems to be decisive of the question. Counsel for appellant contend that if the cited case is not distinguishable from the one at bar it should be overruled as being unsound in principle and against the weight of authority. A number of cases are cited in which it is claimed the contrary rule is maintained. We have examined these cases, and, with the exception of *Agate v. Sands*, 73 N. Y. 620, we do not think any of them are in point. To review the cases and point out the distinction between them and the case at bar would require more time and labor than we deem proper to devote to the question. It is true that in Cook on the Law of Stock and Stockholders it is said that, " where the shareholder's liability by statute is immediate and personal and several, and any creditor may sue any shareholder, then the shareholder may properly set off a debt owing to him from the corporation, when he is sued by a corporate creditor." Section 227*d*. In Thompson on the Liability of Stockholders, section 381, it is said that a "stockholder cannot, in a proceeding against him by or on behalf of a creditor or creditors, set off a debt due to him by the corporation."

An examination of the authorities cited in support of the respective views of these text-writers has led us to the conclusion that we ought not to overrule the case of *Singer v. Given, supra.* It is a fundamental principle that the capital stock of a corporation is in the nature of trust property held for the benefit of creditors. As there is ordinarily no individual liability of the stockholder in excess of his obligation to pay in full for his stock, it appears to us manifestly unjust to allow him to set off his claim as a creditor against his liability as a stockholder. If permitted to do so, his claim as a creditor might be paid in full while the other creditors would receive only a part of the amount due them. It is true a stockholder has a right to deal with a corporation the same as any other person, and, if sued by the

corporation for unpaid installments on his stock, he may have the right to set off debts due to him from the corporation. But as against the claim of a mere creditor, who has the right to demand that the capital stock shall be kept unimpaired for the payment of creditors, it is apparent that the rights of the parties are quite different. The debt due to a stockholder ought not to be held as superior to the claims of creditors. Our conclusion is that the judgment of the district court should be                                        AFFIRMED.