F. D. STOUT AND M. E. McHENRY, Appellants, v. F. M. HUBBELL.

| 104 | 499 |
|-----|-----|
| 111 | 671 |
| 111 | 675 |

Corporations: STOCKHOLDERS: *Creditors*. Creditors of a corporation are not estopped to hold stockholders liable for the difference

1  between the real value of the property transferred in payment of the stock and the face value of the stock, because they were chargeable with constructive notice that the stock was issued in exchange for property, where there was nothing to indicate to them the value of the property received in exchange for the stock.

RULE APPLIED. The promoters of a corporation agreed to purchase at a grossly excessive valuation, and pay therefor by issuing paid-up stock. The articles of incorporation recited the contract,

1  and that the directors should pay for the land by issuing "stock at par for (the agreed valuation). Said stock, when so issued, to be held and regarded as fully paid for by the conveyance of" such land. *Held*, that the record of the articles did not impart knowledge to creditors of the corporation, of the fraudulent valuation.

SAME. Property received by a corporation at an excessive valuation,

2  in payment for shares of its capital stock, is only a payment to the extent of its value as to the corporation's creditors, and the owners of the stock are liable to creditors for the difference between the actual value of the property and the face value of the stock.

*Appeal from Polk District Court.*—HON. T. F. STEVENSON, Judge.

WEDNESDAY, JANUARY 26, 1898.

THIS appeal is by the plaintiffs from a judgment overruling their demurrer to the second count of defendant's answer. The averments in the pleadings and the grounds of demurrer, will appear in the opinion.— *Reversed.*

*Hubbard & Dawley* for appellants.

*Cummins, Hewitt & Wright* for appellee.

GIVEN, J.—I. Plaintiffs, owners of a judgment for six thousand one hundred and sixty-two dollars against the Des Moines Driving Park, an insolvent corporation organized under the laws of Iowa for pecuniary profit, bring this action to charge the defendant, as the owner of unpaid stock in said corporation, to the extent of their said judgment. They allege that the defendant is, and at all times since the organization of said corporation has been, a stockholder therein, and the owner of five hundred and forty-eight shares of its capital stock, of the par value of fifty- four thousand eight hundred dollars; that said corporation "has received for said stock nothing but ninety-one (91) acres of land, of only the value of eight thousand dollars, and there is still unpaid upon said shares of stock the sum of forty-six thousand eight hundred dollars, by reason of which defendant has become, and is now, liable to plaintiffs to the amount of six thousand one hundred and sixty-two dollars, with interest and costs." In the second count of his answer the defendant avers, in substance, as follows: That prior to the organization of said corporation the projectors thereof determined that the land owned by defendant, together with two smaller adjoining tracts owned by other parties, would be suitable for the purposes of the proposed corporation; that he proposed to take six hundred dollars per acre for his land, in the capital stock of the corporation to be organized, and at

the same time said other owners agreed to convey their tracts of land to said corporation, when organized, upon the same terms; that thereupon said corporation was organized, and adopted articles of incorporation, wherein said agreement was substantially set forth as shown by the copy attached; that thereafter, and in pursuance of said articles, and under a resolution of the board of directors, the defendant conveyed said lands to the corporation, in consideration whereof, and in payment of said agreed price he received from the corporation said five hundred and forty-eight shares of its capital stock. He alleges that said articles of incorporation were duly filed for record, and recorded, as required by law, and that the notice of incorporation provided by law was duly published. Copies of said articles and notice are set out as exhibits. "The defendant further alleges that through the said articles of incorporation and notice so filed and recorded, and so published, the plaintiffs, and each of them, had notice of the agreement so entered into between the said Des Moines Driving Park and this defendant, and of the fact that said land so owned by this defendant, and conveyed by him to the Des Moines Driving Park, had been accepted by the said Des Moines Driving Park in full payment of the said five hundred and forty-eight (548) shares of its capital stock, and therefore the plaintiffs cannot now be heard to allege that the said stock has not been fully paid for." The articles of incorporation set out show that F. M. Hubbell, R. G. Scott, J. N. Neiman, Elmer Jackaway, and F. C. Hubbell were the incorporators, and that F. M. Hubbell was selected as president and one of the board of directors, of said corporation. Article 3, after providing that the capital stock should be one hundred thousand dollars, divided into shares of one hundred dollars each, to be subscribed for and paid under the

direction of the board of directors, and that the directors were not authorized to incur any indebtedness until sixty thousand dollars of stock were actually subscribed and paid, contains the following: "The directors of the corporation, however, shall be authorized, and it is hereby declared to be the purpose and intent of these incorporators that the said directors shall purchase of F. M. Hubbell, the West End Syndicate, and the National Real-Estate Investment Company, the real estate hereinafter described, as follows, to-wit: [Here the 91 acres and the two other tracts are described.] And the directors shall pay therefor the sum of sixty-four thousand four hundred and thirty-seven dollars ($64,-437.00), which sum shall be paid by issuing to the said F. M. Hubbell stock at par for the said sum of fifty-four thousand and eight hundred dollars ($54,800.00), and to the West End Syndicate stock at par for four thousand seven hundred and sixty-eight ($4,768.00), and to the National Real Estate Investment Company stock at par for four thousand, eight hundred and sixty-nine dollars ($4,869.00). Said stock, when so issued, to be held and regarded as fully paid for by the conveyance of the real estate hereinbefore described to this association." The notice published contains the following: "The capital stock shall be one hundred thousand dollars, divided into shares of one hundred dollars each. Stock, fully paid up and non-assessable, for the sum of sixty-four thousand, four hundred and thirty-seven dollars, shall be issued to pay for the real estate purchased by said corporation to be used as its park or ground inclosure." Plaintiffs demurred to the second count of the answer "upon the ground that the facts stated in said count 2 do not constitute any defense to plaintiff's petition, for the following reasons." The reasons set out need not be here stated, but will hereafter be considered. The demurrer being overruled, and plaintiffs

electing to stand thereon, judgment was entered against them.

II.   Section 1082 of the Code of 1873 is as follows: "Neither anything in this chapter contained, nor any provision in the articles of incorporation, shall exempt the stockholders from individual liability to the amount of unpaid installment on the stock owned by them, or transferred by them for the purpose of defrauding creditors, and execution against the company may, to that extent, be levied upon the private property of any such individual." It will be observed that it is averred in the petition that said corporation "has received for said stock nothing but ninety-one (91) acres of land, of only the value of eight thousand dollars. This allegation is not denied in said second count of the answer. Therefore, it stands as admitted that the only payment made for this fifty-four thousand eight hundred dollars of stock, was this tract of land, of the value of eight thousand dollars. It is alleged in said second count that the land was given and received under an agreement that it was a full payment for said stock. This, alone, would be no defense; for this court has held, as to creditors of a corporation, that when property is received by the corporation, at an excessive valuation, in payment for shares of its capital stock, it is only a payment to the extent of the value of the property received, and that owners of such stock are liable to creditors for the difference between the actual value of the property and the face value of the stock. See *Osgood v. King,* 42 Iowa, 478; *Chisholm v. Forny,* 65 Iowa, 333; *Carbon Co. v. Mills,* 78 Iowa, 460; Defendant's counsel do not contend that an agreement by which the stock was received as fully paid up, in consideration of land at an excessive valuation, would alone constitute a defense. They concede that it is a fraud upon creditors for the corporation to agree to accept either less than par value in money, or property worth

less than par." Their contention is that "it is impossible, however, that such an agreement upon the part of the corporation shall be a fraud upon a creditor whose debt is created with full knowledge of the manner in which, as between the corporation and the stockholder, the stock has been fully paid." Relying upon the rule that those dealing with the corporation must be held to have knowledge of the provisions of its articles of incorporation, they insist that the further allegation of said second count, as to the contents and recording of the articles of incorporation, and publication of the notice of incorporation, show actual or constructive notice to the plaintiffs of the terms upon which this stock was issued, and that, having extended credit with that knowledge, they are not entitled to recover. Let it be conceded that the plaintiffs are chargeable with all the knowledge which the record of the articles of incorporation imparted. It remains to inquire what that knowledge is. That record told that the directors were authorized and required to purchase of the defendant his said tract of land, and to pay therefor by issuing to him "stock at par for the said sum of fifty-four thousand eight hundred dollars. * * * Said stock, when so issued, to be held and regarded as fully paid for by the conveyance of the real estate described to this association." A person examining these articles with a view to determining whether or not to extend credit to the corporation, would know therefrom that the corporation had given, as fully paid up, fifty-four thousand eight hundred dollars of its capital stock in payment for these ninety-one acres of land. He would have a right to presume that the transaction was fair and free from fraud, and therefore to understand that the land was substantially equal in value to the par value of the stock. There is nothing in this record to indicate otherwise, and these plaintiffs, in extending credit to the corporation, had a

right to assume from this record that, instead of said stock, the corporation had ninety-one acres of land of the value of fifty-four thousand eight hundred dollars. The fraud upon creditors in this transaction is not in the fact that land was taken in payment for stock, but that, according to these pleadings, land was taken at an excessive valuation of forty-six thousand eight hundred dollars,—a fact of which these articles imparted no information. Charging these plaintiffs with all knowledge which the record of the articles imparted, it is clear that that record did not impart the very information that was necessary to a knowledge of the fraud. Therefore, they dealt with the corporation without knowledge that the land had been taken at an excessive valuation. It is said that no fraud is alleged, but facts are alleged which constitute a fraud as to the creditors. In *Carbon Co. v. Mills, supra,* fraud was not pleaded in the petition, and this court said, "But, under the facts of the case, this was not necessary." The cases are so alike in their facts that there is no greater reason for pleading fraud in this than in that case. The statement in the published notice gave no information additional to that contained in the articles, and therefore need not be further noticed. Our conclusion is that matters alleged in the second count of the answer do not constitute any defense to plaintiff's petition, and that the demurrer should have been sustained.—REVERSED.