[No. 1654.]

## The Colorado Fuel & Iron Co. v. The Sedalia Smelting Co. et al.

1. Corporations—Liability of Stockholders—Practice.

The liability of a stockholder for the debts of the corporation to the amount of his unpaid stock may be enforced in a joint equitable action by a creditor against the corporation and the stockholder.

2. Same—Offset.

In an action by a creditor against an insolvent corporation and against a stockholder for his indebtedness to the corporation for unpaid stock, the stockholder cannot offset his indebtedness to the corporation by an indebtedness to him of the corporation for money advanced to the corporation, while it was a going concern, for the purpose of carrying on its business.

*Error to the District Court of Chaffee County.*

Mr. D. C. Beaman and Mr. J. B. McCoy, for plaintiff in error.

Mr. N. M. Campbell, for defendants in error.

Bissell, P. J.

This case practically presents but one proposition, and this

only as it respects the right of a stockholder who has not paid his subscription and is sued by a creditor to enforce his liability to offset in that suit any debts or claims which he may have against the insolvent corporation by reason of advances or obligations otherwise incurred.

In 1893 the fuel and iron company sued the Sedalia Smelting Company and Robert Preston to recover the amount due for certain goods theretofore sold and delivered to the smelting company by the plaintiff. It was alleged the concern had become insolvent and for a long time had ceased to do business, and the various facts were stated on which to predicate Preston's liability. The capital stock of the Sedalia Smelting Company was said to have been $25,000. To it there were but three subscribers, and Robert Preston subscribed for one third of it, amounting at its par value to $8,333.33. Of this sum he paid only $5,000. After insolvency and the company had for a long time ceased to do business, this creditor brought suit against both in order to collect its debt by the enforcement of Preston's stock subscription liability. There were sundry and divers issues presented by the answer which Preston filed, but we are concerned with none of them save as to the indebtedness of the smelting company to Preston. This comes from the fact that the case was tried on an agreed statement of facts without a jury, and it was evidently the purpose and intention of counsel to raise the one issue and let the case turn on it. We shall, therefore, dismiss all consideration of any other questions save the one indicated, and state no further than we have done the issues presented by the pleadings, and revert to the agreed statement of facts to find out what the dispute is about. According to the agreed statement, the fuel company did sell the goods to the smelting company, and the account had been long due prior to the suit. It likewise therefrom appears the smelting company had become insolvent, and for more than a year had ceased to do business, and practically had ceased to exercise its rights or functions as a corporation. Therein further it was stated that Preston, the

defendant, and one Horatio Preston and Van Nostrand constituted the entire board of directors, and that the defendant had paid for his subscription to one third of the stock the sum of $5,000, and that only $12,000 had been actually paid in on account of stock subscriptions. Therein, likewise, it was further stated that when Preston bought the stock and paid his $5,000, he loaned the company the further sum of $5,000, and in addition from time to time advanced other sums amounting to $11,840. For this latter sum he brought suit in Chaffee county and got judgment, sold all the company's property under execution and bought it in for $9,704.27, which is all he ever realized thereon. With this as a basis, there has been a very elaborate amount of figuring by both counsel respecting the amount with which Preston was to be debited, and the amount with which he was to be credited in his dealings with the company, one set of figures bringing him in debt enough to pay the amount of this judgment, and the other leaving him largely a creditor of the company. We do not propose to settle this dispute, and regard it as wholly beyond the question which we shall decide. We do not believe under the agreed statement that the first loan of $5,000, which it is said Preston made the company, can be taken as an outstanding indebtedness over and above the sum for which he got judgment in Chaffee county. This, if it was ever a defense at all, was a defense which Preston must maintain, and he offered no evidence, nor did he obtain a stipulation to support the point that the $5,000 was still due and unpaid. The stipulation is silent about it. It does, however, recite his subsequent suit against the company and a judgment in his favor of $11,840. It is not within reason when he brought suit against the company he left out of the action, as stated, $5,000, if the sum was still due. The presumption is that this claim had long since been paid, and if the accounts of the parties had shown otherwise when he brought suit it would have been included in his statement. Business men do not bring suits for such large sums and, without special reason, leave out of them a claim

for \$5,000 if it be an account existing against the defendant. We do not assume this conclusion as a distinct and fundamental basis for our decision, though it might answer for the purpose, but put it on the naked proposition of law, that in this suit it is not open to the defendant to plead the set-off.

There is a preliminary question which we might as well dispose of since it can be done by a simple reference to a decision of the supreme court and there is no necessity to do otherwise than to state it.   The action was brought and the facts adduced to support the action under two sections of the General Statutes, Gen. Stats. 1883, sections 247, 258. Under the first section stockholders are liable to the amount of their unpaid stock and must answer for all debts of the corporation to the extent to which their stock subscription remains unliquidated to be collected in the statutory manner. Actions may be brought and suits in equity begun against them to enforce this liability.   Section 247 concludes, however, with the phrase " as in cases of garnishment."   It is insisted in this case, as it has been heretofore, that it is only by proceedings in garnishment that the liability can be enforced.   This contention has been disposed of by the supreme court and we need only refer to the decisions of *Smith et al. v. Londoner*, 5 Colo. 365, and *Tabor v. Goss & Phillips Mfg. Co.*, 11 Colo. 419.

This brings us back to the original point, as to the right of set-off.   We are quite ready to concede the matter is not wholly free from doubt, and that in New York in apparently well reasoned and well considered cases, it has been adjudicated that a defendant who is sought to be made liable for the debts of a corporation under acts creating the liability and providing the methods of enforcement, may set off legitimate claims which he has against the defaulting corporation. It is also true in other states, notably Kansas, in which under peculiar statutes, defendants have been permitted to plead offsets, where they have subsequent to the insolvency paid debts which the corporation owed, or liquidated judgments which have been obtained against it.   Offsets of this descrip-

tion have been regarded as within the terms of the statute. In such cases it has been held that the defaulting stockholder has a right to liquidate the claims which the corporation has against him by paying other debts which it owes, and that such payment will relieve him from liability. It is not, however, generally held that a stockholder who advances money while a corporation is a going concern for the purpose of carrying on its business, having at the time of the advance failed to pay his stock subscription, can in an action begun to enforce his statutory liability, offset these advances and thereby pay his stock debt and escape a liability as to other creditors. He is not entitled thus and thereby to obtain an undue preference over the other creditors, nor are these claims regarded as claims arising in such a way as to make them debts in the same light, and therefore and to this extent mutual. The doctrine which may be said to have been invented by Judge Story, or at least to have first received judicial expression in the *Wood Drummer* case, reported in 3 Mason, that the funds of a corporation are a trust fund and are to be devoted to the liquidation of the claims of creditors of the company, has been variously commented on, applied to divers conditions, and has really become a part of the settled law of the United States. According to the criticism in Thompson's Commentaries on the Law of Corporations, it has received a very grave shock from a late decision of the supreme court of the United States, but with the apparent exception thereby established we have no concern. It is still the law of this jurisdiction. The stocks of corporations and particularly unpaid subscriptions are a trust fund *sub modo* for the benefit of general creditors. This doctrine has always been declared by the supreme court of the United States and is reasserted even in the case which is criticised. In *its* application the debt due by the corporation to the defaulting stockholder may not be set off in any suit begun for the purpose of enforcing the unpaid stock subscription, whether that suit is begun by an assignee in bankruptcy, by a trustee, by a creditor, or by any one entitled to maintain

the suit other than the corporate entity itself. This is the substantial result of all the cases, and there is such entire harmony respecting it that it would be worse than useless to restate the arguments which have been used to support it. It is enough that the law has been so declared by distinguished courts which we are entirely willing to follow. *Bausman v. Kinnear*, 79 Fed. Rep. 172; *Mechanics' Savings Bank v. Fidelity Ins. Trust & Safe Dep. Co.*, 87 Fed. Rep. 113; *Sawyer v. Hoag*, 17 Wall. 610; *Clark v. Bever*, 139 U. S. 96; *Fogg v. Blair*, 139 U. S. 118; *Scovill v. Thayer*, 105 U. S. 143; *Scarmon v. Kimball*, 92 U. S. 362; *County of Morgan v. Allen*, 103 U. S. 498; *Upton v. Tribilcock*, 91 U. S. 45; *Sangor v. Upton*, 91 U. S. 56; *Thompson v. Reno Savings Bank*, 19 Nev. 103; *Shickle v. Watts*, 94 Mo. 410; *Singer et al. v. Givens*, 61 Ia. 93; *Bolton Carbon Co. v. Mills*, 78 Ia. 460; *The Ball Elec. Co. v. Child*, 68 Conn. 522; *Wyman v. Williams*, 53 Neb. 670; *Richardson v. Merritt*, 77 N. W. Rep. 968; 3 Thompson's Com. on Law of Corporations, chap. 70. The substantial uniformity of the adjudications under these stock liability statutes, supported as they are by the persuasive judgments of the supreme court of the United States, would compel us to adopt the conclusion regardless of our own convictions. We are well satisfied the doctrine is right and that a party who has subscribed for stock and failed to pay for it must under our statutes respond to the creditors of the company to the extent of his unpaid subscriptions, and then look, if at all, to other stockholders for contribution. We cannot regard this long line of authorities as shaken even by such able and well considered decisions as are found in the reports of New York.

Under the agreed statement of facts, the plaintiffs were entitled to have judgment, and since the court refused it the case must be reversed and sent back for further proceedings in conformity with this opinion.

*Reversed.*