## In re FOSTER CONST. CORPORATION.*

District Court, S. D. New York.

Feb. 17, 1931.

*See, also, 48 F.(2d) —.

Louis Jersawit, of New York City, for Joseph Popkin.

Leo J. Linder, of New York City, for D. Ginsberg & Sons.

WOOLSEY, District Judge.

This motion is in all respects denied.

I. On December 3, 1930, Judge Inch, in the Eastern District of New York in which the above-named proceeding in bankruptcy is pending, granted an order on application of D. Ginsberg & Sons, Inc., a creditor in the said bankruptcy proceeding, by which it was authorized and empowered to apply to this court (1) for an ancillary order of examination of Joseph Popkin, and such other witnesses within this jurisdiction, as may be necessary, as to the acts, conduct, and property of the bankrupt corporation, and (2) for orders ne exeat directed to the marshal of the Southern District of New York.

This permission and authority was by the order extended also to the district of New Jersey, but that concerns us not. This order was filed in this district on December 4, 1930, as a foundation for the proceeding now before me. Cf. Babbitt v. Dutcher, 216 U. S. 102, 114, 30 S. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; In re Elkus, 216 U. S. 115, 116, 117, 30 S. Ct. 377, 54 L. Ed. 407.

II. In pursuance of this authority and permission, and on the 4th day of December, 1930, Judge Goddard, on petition of D. Ginsberg & Sons, Inc., granted ex parte an order for ancillary examination of Joseph Popkin before Referee Ehrhorn and an order ne exeat against him.

The petition on which this order was granted reads, as far as it is relevant, as follows:

"1. That your petitioner is a creditor of the above named bankrupt, having duly filed its proof of claim herein in the sum of $14,958.15.

"2. That on the 23rd day of September, 1929, a petition in bankruptcy was filed against the above named bankrupt in the United States District Court for the Eastern District of New York, and thereafter Foster Construction Corporation was duly adjudicated a bankrupt in said court.

"3. That Joseph Popkin is the president of the bankrupt corporation and he has withdrawn and failed to account for more than $100,000.00 of the cash funds of the bankrupt corporation. Joseph Popkin has never been examined in the bankruptcy proceedings hereinabove referred to. In 1929, Joseph Popkin fled to Canada to avoid arrest and remained out of the jurisdiction until such time as he believed his creditors had been placated into not taking any action against him. On January 27, 1930, a ne exeat order was made by the United States District Court for the Eastern District of New York commanding the United States Marshal for the said district to take Joseph Popkin into custody, but Joseph Popkin again fled the jurisdiction of the United States District Court for the Eastern District of New York, and in spite of the strenuous efforts made by your petitioner and other creditors, no trace could be found of him. Your petitioner discovered a few days ago that Joseph Popkin had come back to Greater New York and applied for and procured an order yesterday, December 3, 1930, made by Honorable Robert A. Inch, District Judge, commanding the United States Marshal for the Eastern District, to arrest Joseph Popkin or cause him to give bail in the sum of $10,000.00. That officers of your petitioner, with a Deputy United States Marshal of the Eastern District proceeded to Manhattan yesterday afternoon upon ascertaining that he was in an office building in Manhattan, and followed him from an office building in Manhattan to Jersey City, where Joseph Popkin apparently went to spend last night. Your petitioner believes that Joseph Popkin is aware that he is being hunted and that he has fled to Jersey City believing that he was safe there. Your petitioner does not know whether Joseph Popkin will return to New York City or will return to Jersey City, but believes it imperative that an order directing his examination and directing a United States Marshal for this district to take him into custody is necessary. Your petitioner believes that if Joseph Popkin is not apprehended immediately that he will again run away and leave the United States as he did before.

"4. This application is made by your petitioner instead of by a trustee in bankruptcy, who was appointed herein in June, 1930, because the trustee in bankruptcy, who was appointed herein, is Benjamin Kronenberg, an attorney, who at one time represented the bankrupt corporation, and who, your petitioner believes, is friendly with Joseph Popkin. The trustee in bankruptcy was elected over the objection of your petitioner and various other creditors, which objection was specifically grounded on the impropriety of his serving as trustee by reason of his relations with the bankrupt corporation, but that, nevertheless, in spite of this objection, Benjamin Kronenberg was appointed trustee by virtue of the votes of certain creditors, including creditors who had at one time been personally represented by the same Mr. Kronenberg. That your petitioner believes that it would endanger the interests of creditors to even notify Mr. Kronenberg of this application.

"5. That Joseph Popkin's testimony is material and necessary in aid of the petitioner as to the acts, conduct and property of the bankrupt, and that Joseph Popkin was in a number of office buildings yesterday in the Borough of Manhattan, apparently transacting some business there, and your petitioner believes that he may be found in the Borough of Manhattan some time today. Your petitioner further states that Joseph Popkin slept last night in a residence in Jersey City, and that he may appear again in Jersey City some time during today or this afternoon. That Joseph Popkin will unquestionably leave the jurisdiction of this court and, in all probability, leave the jurisdiction of the United States for a third time if he is not apprehended immediately.

"6. That ancillary proceedings to obtain this order of examination and ne exeat order are necessary in this District, and on the 4th day of December, 1930, the United States District Court for the Eastern District of New York, by an order entered therein, duly authorized the petitioner to apply to this court for an ancillary order of examination and order of arrest."

III. The order so granted by Judge Goddard was duly served on Popkin, and on his

arrest he posted a bond in the sum of $10,-000, as fixed by Judge Goddard.

IV. The point made by the moving party that the papers are insufficient on their face is wholly without merit, and will not be further mentioned.

 It is urged, however, that, as Popkin is not himself the bankrupt, but merely the president of a bankrupt corporation, the order of ne exeat could not properly be granted, for the reason that such a writ is limited to a party in the suit and has not been extended to witnesses. The provenance and early history of the writ of ne exeat may be found in Beames on Ne Exeat, c. 1; and Spedding's Edition of Bacon's Works, vol. 7, pp. 771, 772.

Cases are cited by the moving party as instances of the use of the writ, all of which involved the arrest of the bankrupt himself or of a party respondent in equity.

The question of the extension of the writ to a situation of the kind here shown is believed, therefore, to be of first impression.

It should be observed that the application was not made under section 9, subd. b, of the Bankruptcy Act of 1898 (11 USCA § 27(b), which deals precisely with such a writ against the bankrupt, but under section 2 (15) of the Bankruptcy Act, 11 USCA § 11(15), which endows courts of bankruptcy, as defined in the act, section 1(8), 11 USCA § 1(8), with all the powers necessary to enforce the provisions of the act.

Bankruptcy Act of 1898, § 2, provides, inter alia, as follows (italics mine):

"The courts of bankruptcy * * * are hereby invested * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings * * * to * * * (15) *make such orders, issue such process,* and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title."

A *"process"* is *"a writ, warrant, subpœna or other formal writing issued by authority of law."* Bouvier's Law Dictionary, Rawle's Third Revision, vol. 3, page 2731.

Judge Goddard's order clearly falls within this definition.

V. The incorporation of the bankrupt is invoked as creating a nonconductor between creditors and Popkin, the president of the bankrupt, and Klein v. Board of Supervisors, 282 U. S. 19, 24, 51 S. Ct. 15, 75 L. Ed. ——, is cited. This argument does not go far towards meeting the situation here.

The corporate entity is a nonconductor between stockholders and the outside world in most jurisdictions and in most cases. But this useful characteristic does not apply between an officer of a bankrupt corporation and the bankruptcy court, or its officers and mandatories. Officers of bankrupt corporations are regarded in courts of bankruptcy as the bankrupts for many purposes which it is unnecessary to enumerate. Cf. Remington on Bankruptcy, § 542, pp. 1977, 2384; and see, also, Remington on Bankruptcy, § 3009; In re Alphin & Lake Cotton Co. (D. C.) 131 F. 824, 825, 826; In re Fixen & Co. (D. C.) 96 F. 748, 752; In re Horgan & Slattery, 98 F. 414, 415, 416 (C. C. A. 2); In re Muncie Pulp Co., 139 F. 546, 548 (C. C. A. 2); In re Royce Dry Goods Co. (D. C.) 133 F. 100, 106; In re Cantelo Mfg. Co. (D. C.) 185 F. 276.

VI. The order issued by Judge Goddard, even if it be not regarded as a strictly canonical ne exeat order, is in the nature of such an order, and in the granting of it I think Judge Goddard acted entirely within the powers granted to courts of bankruptcy by section 2 (15) of the Bankruptcy Act to "make such orders [and] issue such process * * * in addition to those specifically provided for as *may be necessary for the enforcement of the provisions of this title.*"

Certainly the order here complained of is necessary under the circumstances here alleged—of which the truth is not challenged—in order to enforce the provisions of the Bankruptcy Act in connection with this bankrupt's estate.

If this court did not have the power here invoked and exercised, dishonest officers of bankrupt corporations could flout the Bankruptcy Law with impunity.

Settle order on two days' notice.