THE GARDEN CITY SAND COMPANY

*v.*

THE AMERICAN REFUSE CREMATORY COMPANY *et al.*

*Opinion filed October 26, 1903—Rehearing denied December 2, 1903.*

1. CORPORATIONS—*rule as to amount involved in proceeding under section 8 of Corporation act.* In a proceeding, under section 8 of the Corporation act, by a creditor of an insolvent corporation to reach unpaid balances on stock, the liability of each stockholder is distinct, and the amount involved, as to each, is the amount unpaid upon the stock held by him.

2. SAME—*that stock is issued as fully paid does not exempt stockholder from liability.* That stock in a corporation purports to be fully paid and non-assessable does not exempt the stockholders from liability, under section 8 of the Corporation act, for the unpaid balance due thereon.

3. SAME—*purchasers of stock are chargeable with notice of patent facts.* One purchasing stock in a corporation under such circumstances that a person of ordinary intelligence would know the facts in relation thereto is chargeable with knowledge of such facts.

4. SAME—*exchange of property for stock must be bona fide.* An exchange of property for stock in a corporation must constitute a valid contract of bargain and sale in good faith and in the exercise of honest judgment.

5. SAME—*creditor is not required to prove that stockholder was told of over-valuation.* A creditor of an insolvent corporation is not required to prove that each purchaser of stock was told of the fraudulent over-valuation of the property given in exchange for the stock, it being sufficient if he establishes such facts as properly lead to an inference of knowledge on the part of the purchaser.

6. SAME—*what establishes notice that stock is not fully paid.* Purchasers of stock in a corporation capitalized for $1,000,000 who know the corporation has no money and no property except an interest in a patent transferred to it by the owner in exchange for all of the stock except two shares, are chargeable with notice that the property was over-valued and the stock not fully paid.

*Garden City Sand Co.* v. *Crematory Co.* 105 Ill. App. 342, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.

EDWIN C. CRAWFORD, for appellant.

GOODRICH, VINCENT & BRADLEY, and MAX PAM, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The American Refuse Crematory Company was incorporated under the laws of this State on January 29, 1894, for the purpose of making, operating and dealing in crematory furnaces, with a capital stock of $1,000,000, divided into ten thousand shares, of $100 each. Bertrand Walker and Clyde R. Bates each subscribed for one share of the capital stock and Frank C. Rutan subscribed for the remainder, nine thousand nine hundred and ninety-eight shares, of the par value of $999,800. As an ostensible payment for the stock issued to him, Rutan, who had subscribed for all the stock except two shares and who was practically dealing with himself, assigned to the corporation his interest in letters patent issued by the United States to William M. Johnson for an invention in garbage crematories, which gave to the corporation the right to manufacture and sell crematories in the United States, except the State of Illinois, subject to the conditions of the transfer of the same interest from Johnson to Rutan. The stock was issued as "fully paid and non-assessable." The corporation became indebted to the appellant, the Garden City Sand Company, a corporation of this State, for materials sold to be used in the construction of a crematory plant. On October 23, 1895, the crematory company, being insolvent, made an assignment for the benefit of its creditors and ceased to do business. All its property was sold under an order of court for $250, which was less than enough to pay the expenses of administration under the assignment, and the amount realized was ordered by the court disbursed for such expenses. Appellant recovered a judgment in the superior court of Cook county on January 9, 1896,

against the crematory company for said indebtedness, amounting to $1598.68 and costs, upon which judgment an execution was issued. The crematory company allowed the execution to remain unsatisfied for more than ten days after a demand by the sheriff, whereupon the bill in this case was filed by appellant on February 20, 1896, in said superior court, alleging that the stock had never been fully paid for by any person, and seeking to enforce the statutory liability of appellees as stockholders, who own stock originally issued to Rutan. The bill alleged that the crematory company had become indebted in divers sums to other creditors mentioned therein, and it prayed for an ascertainment of the amount due from said stockholders, and that they be ordered to pay the judgment of appellant and the claims of other creditors who should come in and prove their claims. The corporation and appellees answered the bill, admitting the assignment, the sale of all the property of the corporation for less than enough to pay the expenses of administration, and that the corporation had ceased doing business, but denying any knowledge that the stock was not fully paid for. The cause was referred to a master in chancery, who took the evidence and reported the same, with his conclusions that at the time Rutan assigned his interest in the patent to the corporation he was the owner of all the stock except two shares, and was practically the corporation; that the value of the patent at the time of its assignment to the corporation did not exceed $50,500, and the excess above that sum was a fraudulent over-valuation of the same; that Rutan should not be allowed credit on his stock subscription above the sum of $50,500, and there was still due from him $949,300, and that with the exception of Rutan there was no proof that any of the appellees had knowledge of the transaction and of the issuance of stock to the amount of $999,800 in payment for the interest in the patent. The master therefore recommended that the bill be dismissed as to the

stockholders except Rutan, and that a decree be entered against him for the amount of appellant's judgment and the claims of other creditors who had proved their claims in the cause, together with interest thereon.   Appellant excepted to the report of the master, but the court approved the report and entered a decree accordingly.   The bill was dismissed at the appellant's costs, except as to Rutan, and there was a decree against him as recommended by the master.   The Appellate Court for the First District affirmed the decree.

Appellees have entered their motion to dismiss the appeal on the ground that the liability of each of them is several; that less than $1000 is involved as to them severally, and that the judgment of the Appellate Court is therefore final.   The liability sought to be enforced is declared in section 8 of chapter 32 of our statutes, which provides that each stockholder shall be liable for the debts of the corporation to the extent of the amount that may be unpaid upon the stock held by him, and that every assignee of stock shall be liable to the company for the amount unpaid thereon, to the extent and in the same manner as if he had been the original subscriber. (Hurd's Stat. 1899, p. 436.)   The liability of each stockholder is separate and distinct, and the amount involved as to each is the amount unpaid upon the stock held by him.   If any stockholder shall prove to be insolvent, his portion of the debts is to be divided among the solvent stockholders, but the limit of liability is the amount remaining unpaid upon the stock held by him.   The decree of the superior court being against appellant, the amount involved is to be determined from the evidence.   There was some value in the patent, and the amount involved as to any of the appellees holding stock not amounting to more than $1000 would be less than that sum after crediting a proportionate share of such value.   There is therefore less than $1000 involved as to three of the appellees: Wilbur H. Fitch, whose stock amounts to $1000;

J. Erika Anderson, who holds the same amount, and Dora Johnson, whose stock amounts to $500. The appeal is dismissed as to them. More than $1000 is involved as to each of the other appellees, and as to them the motion is overruled. (*Farwell* v. *Becker*, 129 Ill. 261.) Some of them made small advances of money to the corporation, but they insist that they did not buy their stock from it or subscribe for the stock, but received it from Rutan, supposing it had been fully paid for, and these advances must be taken to be something else than payment on the stock.

There is no evidence from which it can be said that the interest in the patent assigned to the corporation was worth $50,500, or which would lead to the conclusion that the appellees, or any of them, would have given money or money's worth to that amount for it. On the contrary, the evidence tends to prove that the patent was practically worthless, since the whole property of the corporation was sold for $250. The question here, however, is whether there was a fraudulent over-valuation of the patent at the time it was transferred to the corporation, and on that question reasonable allowance is to be made for all expectations of success, although they may not be realized. The conclusion of the master that the interest in the patent could not have been, in good faith, regarded as worth more than $50,500 was liberal to the appellees, after making all possible allowances for errors in judgment. No fault is found with the conclusion of the master on that question, but appellees say that there was no proof that any of them knew of the actual consideration paid to Rutan for the interest in the patent, and that, although there may have been a fraudulent over-valuation as between the corporation and Rutan, there was no evidence that any of the appellees knew that the interest in the patent was not worth, in cash, the full par value of the stock exchanged for it. The stock was issued to Rutan in a single certificate,

and it is claimed by appellant that the certificate was returned and canceled and the stock was re-issued in some form to the appellees as treasury stock, and that they did not pay for it. The records of the corporation show some proceedings for raising money with reference to treasury stock, but appellees insist that they did not buy any treasury stock from the corporation but received their stock from Rutan, and that whatever they paid for it they paid to him. The stubs in the stock-book show that appellees received their stock by assignment from Rutan, and there was no other source from which they could have received it. Practically the whole stock of the corporation was issued to him for the patent, and the corporation did not purchase any of the stock and had no money to buy any with. The stock of appellees was in some way transferred from Rutan to them, and the master and court so found. The position of appellees on that question is undoubtedly correct, and the question in dispute between the parties is whether the appellees had notice that the stock was issued in exchange for the interest in the patent, and that there was a fraudulent over-valuation.

, The stock was issued as fully paid and non-assessable, but that fact furnishes to appellees no exemption from liability. Judge Thompson characterizes that statement in stock certificates as the most shallow and ineffective, although perhaps the most common, of the many devices resorted to by stockholders to escape the liability assumed by their contract of subscription. (Thompson on Liability of Stockholders, sec. 129.) The practice of issuing stock in that way upon payment of a small percentage of its par value is now so common that it is questionable whether it ought to raise any presumption of full payment. The report of the master and the decree were based entirely on the evidence introduced by appellant, none being offered by any of the appellees, and there is no claim that appellees bought their stock

in any open market where stocks were dealt in, so that none of the presumptions arising in case of such a purchase can be indulged in. They bought their stock from Rutan, and if the circumstances were such that a person of average intelligence would know the facts in relation to it, they must be held chargeable with such knowledge.

Undoubtedly, stock may be issued in payment of the purchase price of property sold to the corporation if the property is such as the corporation may lawfully purchase. Where a corporation desires property for corporate uses and the owner of the property desires to purchase stock, an exchange is equivalent to paying money for the property and the vendor paying it back for shares of stock. In such a case the corporation may agree with the stockholder as to the value of the property to be taken in payment for the stock, but the transaction must constitute a valid contract of bargain and sale in good faith, in the exercise of fair and honest judgment. (*Sprague* v. *National Bank of America,* 172 Ill. 149.) It is also true that where there is nothing to apprise an innocent purchaser that the property was worth less than the face value of the stock, and that there was a fraudulent over-valuation, he will be protected. (Thompson on Liability of Stockholders, sec. 135.) He is not to be charged with liability to the creditors of the corporation where he acts in good faith and there are no circumstances to put him upon inquiry. It is, of course, unnecessary, as well as impracticable, for a creditor to prove that each purchaser of stock was told that there had been a fraudulent over-valuation of a patent taken in exchange for it, but if he establishes such facts as properly lead to the inference of knowledge it will be sufficient. In this case the corporation had a capital stock of $1,000,-000, all of which, except two shares, was issued to Rutan and purported to have been fully paid. It therefore appeared to have a paid up capital of $1,000,000 in money or property, and was possessed of nothing but the inter-

est in the patent.    It is not conceivable that a person
of ordinary intelligence and prudence, buying shares of
stock in such a corporation, would not become advised
as to what property the corporation had.    In fact, some
of the appellees made advances of money to meet ex-
penses and pressing necessities.    The directors were
soliciting bids for a contract to build a furnace and en-
deavoring to provide a small amount of money, as com-
pared with the capital stock, for that purpose.    It is
clear that appellees knew that the corporation had no
money and no property aside from the patent, and it
would not be creditable to them to say that they believed
the patent to be worth $999,800.    The interest in the pat-
ent was assigned to the corporation by Rutan and the
stock was issued to him, and we do not see how it can
be contended that appellees did not know, when the cor-
poration had no money or property aside from the pat-
ent, that the stock was either issued in exchange for it
or not paid for at all.    We regard the proof as establish-
ing the fact of notice to appellees of the transaction and
over-valuation.    They knew that the corporation did not
have a paid up capital of $1,000,000, and that Rutan had
not paid for the stock unless it was given for the patent.

The judgment of the Appellate Court and the decree
of the superior court are reversed and the cause is re-
manded to the superior court, with directions to allow to
the appellees (except those as to whom the appeal has
been dismissed) their proportionate share of the value
of the patent at $50,500, and any cash payment made to
the corporation as a payment on the stock held by them,
if any, and to then ascertain the amount due and unpaid
on the stock held by each of them, and to enter a decree
assessing them such amounts as will produce enough
to pay the judgment of appellant and the other claims
proved against the corporation, in accordance with the
prayer of the bill.            *Reversed and remanded.*