(April 21, 1926.)

C. I. GRIMSMOE, Administrator of the Estate of JOHN C. FEEHAN, Deceased, Appellant, v. F. D. KENDRICK, Respondent.

[247 Pac. 746.]

CORPORATIONS—STOCKHOLDER'S LIABILITY FOR UNPAID STOCK—PLEADING—SUFFICIENCY OF COMPLAINT—EXCESSIVE VALUATION OF PROPERTY EXCHANGED FOR MINING STOCK.

 1. Complaint, in action to enforce stockholder's liability for unpaid stock under C. S., sec. 4728, alleging that stock had been acquired with knowledge of fraud in issuance, in that attempt

had been made to make stock fully paid by exchanging property at excessive valuation, was not subject to demurrer for failure to state cause of action.

2. Allegation that stockholder had actual knowledge that par value of stock had not been fully paid, and that property received in exchange for stock was taken at excessive valuation, states cause of action to enforce stockholder's liability for unpaid stock, under C. S., sec. 4728, although reciting that stock was fully paid.

3. Corporate stock, exchanged for property given excessive valuation, remains unpaid to extent of difference between actual value of property and par value of stock.

4. Assignee of stock issued in payment for property to amount grossly in excess of its value must have notice therefor before liability for unpaid stock, under C. S., sec. 4728, will arise.

5. Complaint to enforce stockholder's liability, under C. S., sec. 4728, alleging different dates of purchase of stock, *held* not subject to demurrer for uncertainty.

6. Where complaint in action to enforce stockholder's liability for unpaid stock, under C. S., sec. 4728, set out in detail indebtedness owing from corporation to plaintiff, it was not subject to demurrer for failure to disclose when debts sued on were incurred.

7. Provisions of Const., art. 11, sec. 9, and C. S., sec. 4728, relative to stockholder's liability, on unpaid stock, are equally applicable to mining corporations as well as to others.

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. A. H. Featherstone, Judge.

Action to enforce stockholder's liability for unpaid stock. Demurrer to complaint sustained and judgment of dismissal entered. *Reversed* and *remanded.*

Publisher's Note.

3. See 7 R. C. L. 362.
4. See 7 R. C. L. 402.

See Corporations, 14 C. J., sec. 1487, p. 960, n. 79; sec. 1596, p. 1027, n. 92; sec. 1744, p. 1118, n. 29; sec. 1749, p. 1120, n. 62; p. 1121, n. 74.
Pleading, 31 Cyc., p. 73, n. 35.

John P. Gray and James A. Wayne, for Appellant.

The second amended complaint states a cause of action, and is not uncertain. (*Feehan v. Kendrick,* 32 Ida. 220.)

Where stock in a corporation is issued as paid up in exchange for property, and a grossly excessive valuation is placed upon such property, such stock is unpaid to the extent of the difference between the actual value of said property and the par value of said stock. (*Lloyd v. Preston,* 146 U. S. 630, 13 Sup. Ct. 131, 36 L. ed. 1111; *Babbitt v. Read,* 215 Fed. 395, 236 Fed. 42, 149 C. C. A. 252; *Kelly v. Fourth of July Min. Co.,* 21 Mont. 291, 69 Am. St. 668, 53 Pac. 959, 42 L. R. A. 621; *Macbeth v. Banfield,* 45 Or. 553, 106 Am. St. 670, 78 Pac. 693; *R. H. Herron Co. v. Shaw,* 165 Cal. 668, Ann. Cas. 1915A, 1265; 133 Pac. 488,; *Moore v. Universal Elev. Co.,* 122 Mich 48, 80 N. W. 1015; *State Trust Co. v. Turner,* 111 Iowa, 664, 82 N. W. 1029, 53 L. R. A. 136; *Webre v. Christ,* 130 La. 450, 58 So. 145; *Holcombe v. Trenton White C. Co.,* 80 N. J. Eq. 122, 82 Atl. 618; 82 N. J. Eq. 364, 91 Atl. 1069.)

Walter H. Hanson and C. W. Beale, for Respondent.

The second amended complaint does not state facts sufficient to constitute a cause of action. (Morawetz on Private Corporations, secs. 591, 830; *Richardson v. Treasure Hill Min. Co.,* 23 Utah, 366, 65 Pac. 74; 1 Cook on Corporations, sec. 46; *Rubino v. Pressed Steel Car Co.* (N. J.) 53 Atl. 1051, 1053; *McCarthy v. Bunker Hill & Sullivan Min. & Con. Co.,* 147 Fed. 981; *Dillion v. Barnard,* 88 U. S. 430, 22 L. ed. 673; *Pullman Car Co. v. Missouri Pacific Co.,* 115 U. S. 587, 596, 6 Sup. Ct. 194, 29 L. ed. 499; C. S. secs. 4752, 5435; *Anderson v. Avey,* 272 Fed. 664; *Nelson v. Hudgel,* 23 Ida. 327, 335, 130 Pac. 85; 2 Pomeroy on Equity Jurisprudence, sec. 876; *Coit v. North Carolina Gold Amalgamating Co.,* 119 U. S. 343, 345, 7 Sup. Ct. 231, 30 L. ed. 420; *Clark v. White,* 12 Pet. (U. S.) 178, 200, 9 L. ed. 1046; *John A. Roebling's Sons v. Kinnicutt,*

248 Fed. 596; *Troup v. Horback,* 53 Neb. 795, 74 N. W.
326; *Southern Dev. Co. v. Silva,* 125 U. S. 247, 8 Sup. Ct.
881, 31 L. ed. 678; *Cardoner v. Day,* 253 Fed. 572; *Coffin
v. Ransdell,* 110 Ind. 417, 11 N. E. 20; *Davies v. Ball,* 64
Wash. 292, Ann. Cas. 1914B, 750, 116 Pac. 833; *Fogg v.
Blair,* 139 U. S. 118, 11 Sup. Ct. 476, 35 L. ed. 104;
*McDowall v. Sheehan,* 129 N. Y. 200, 29 N. E. 299; *Hospes
v. Northwestern Mfg. & Car Co.,* 48 Minn. 174, 31 Am. St.
637, 50 N. W. 1117, 15 L. R. A. 470; *Wilson v. St. Louis &
W. R. Co.,* 120 Mo. 45, 25 S. W. 527.)

The second amended complaint is uncertain. (*Winona
Wagon Co. v. Bull,* 108 Cal. 1, 40 Pac. 1077; *Whitehurst v.
Stuart,* 129 Cal. 194, 61 Pac. 963; *John A. Roebling's Sons
Co. v. Butler,* 112 Cal. 677, 45 Pac. 6; *Bidwell v. Babcock,*
87 Cal. 29, 25 Pac. 752.)

BUDGE, J.—Pending the appeal of this case appellant
died and the administrator of his estate has been substi-
tuted in his stead.

The action was brought by appellant to recover from
respondent a debt originally incurred by the Coeur d'Alene
North Fork Mining & Smelting Company, stock in which
corporation had been issued as fully paid in exchange for
mining property, and in which corporation respondent was
a stockholder.

To the first complaint filed a demurrer was interposed
and sustained. Thereafter appellant filed an amended com-
plaint alleging, *inter alia,* that in 1908 there was organized
under the laws of this state a corporation known as the
Coeur d'Alene North Fork Mining & Smelting Company,
the purpose of the company being, generally, to acquire,
own and operate mining property; that the company was
incorporated ·for $1,500,000, divided into 150,000 shares of
the par value of $10 per share; that only three shares
of said stock were really subscribed and paid for; that
the corporation owned no property whatever at the time of
its organization; that one Spalding, one of its incorpora-
tors, and a purchaser of one share of its capital stock,

was the owner of three undeveloped lode mining claims and one placer mining claim situated near Murray, Idaho; that these four claims were of little value, to wit, not exceeding $500; that by resolution of its three stockholders, one of them being Spalding, and all of them together owning but three shares of stock, the corporation purchased these four mining claims at a valuation of $1,500,000, paying for the same by the issuance of all of the 150,000 shares of the capital stock of the corporation, except the three shares owned by the original promoters.

It is alleged that the manifest purpose of the resolution above mentioned was an attempt to make the entire issue of stock fully paid and to fraudulently relieve all persons who might thereafter purchase any of such stock from any personal liability, thus avoiding the personal liability of stockholders imposed by C. S., sec. 4728. It is further alleged that at the time of this transaction the three stockholders of such corporation, who were also the directors thereof, well knew that the four mining claims in question were not worth more than $500.

The amended complaint further alleged that respondent was a stockholder in said mining corporation from about the time of its organization in 1908; that he was the owner of 17,000 shares of its capital stock of the par value of $170,000; that for 4,500 shares of this stock respondent paid $5 per share, leaving a balance due thereon of $22,500; that for the remaining 12,500 shares owned by respondent he paid no consideration whatever, so that the full par value of the latter number of shares, amounting to $125,000, was unpaid.

Appellant alleged that he was a judgment creditor of said mining company to the extent of its owing him $11,515.30, the judgment bearing date of February 11, 1915.

It is further alleged in the amended complaint that on July 7, 1913, respondent, by foreclosure proceedings, purchased all of the property of said mining corporation; that no redemption was had within the time provided for and that respondent was therefore the owner of all of the

property of said corporation, and that the corporation was without assets, and insolvent. It is specifically alleged that respondent was a stockholder in said corporation during all of the times when the original indebtedness was incurred, which said indebtedness was included in and made up the judgment of appellant; and that respondent was not and never had been a resident of the state of Idaho.

The prayer of the complaint was to the effect that the court determine the amount of the par value of the stock held by the respondent in the corporation which was unpaid; that the same be paid into court, and that the judgment of the appellant be ordered paid.

To the amended complaint respondent demurred. Numerous grounds of demurrer were interposed and relied upon, including the bar of the statute of limitations, under the provisions of subdivision 1 of C. S., sec. 6611 and C. S., sec. 6630. The trial court sustained the demurrer upon the ground that the action was barred by the provisions of C. S., sec. 6630, and the action was dismissed. From the judgment of dismissal an appeal was prosecuted to this court. (*Feehan v. Kendrick*, 32 Ida. 220, 179 Pac. 507.) The judgment was sustained, this court holding that the trial court erred in sustaining the demurrer on the ground that the cause of action was barred by the provisions above referred to, but holding that the complaint was fatally defective for the reasons stated in the opinion, and in the course of its opinion the following observations were made:

"The amended complaint is fatally defective in that it does not appear therefrom that respondent (who was not one of the incorporators or original subscribers to the stock) was a purchaser of shares with notice of fraud in the issuance thereof, or that the same were not fully paid for. Possessors of certificates of stock are, *prima facie,* presumed to be *bona fide* holders, and it was incumbent upon appellant to allege that respondent was not a holder in good faith without notice of the fraud charged. (*Finletter v. Appleton*, 195 Pa. St. 349, 45 Atl. 1063; *Hess v. Trumbo,* 27 Ky. Law Rep. 320, 84 S. W. 1153; *Steacy v. Little Rock etc. Ry Co.*, 5 Dill. 348, 22 Fed. Cas. 1142.) At the most, re-

spondent is only charged, by the facts alleged, with notice of what the corporate records show, which is that the stock has been fully paid for, in property, as permitted by Rev. Codes, sec. 2745. (*Steacy v. Little Rock etc. Ry. Co., supra; Du Pont v. Tilden,* 42 Fed. 87.)

"A purchaser of stock, originally issued as fully paid up in exchange for fraudulently overvalued property, is not liable to corporate creditors for the unpaid balance of its par value in excess of the true value of the property, where he acquired the stock in good faith and without notice." (Citing cases.)

A petition for rehearing was filed by appellant for a modification of the judgment. Said petition was supported by affidavit setting out therein that respondent had actual knowledge and notice of the fraud in the issuance of the stock and had purchased 17,000 shares thereof with full knowledge and notice of the grossly excess valuation arbitrarily placed on the mining property conveyed to the corporation in exchange for all of its capital stock. The petition was granted, and in an opinion upon rehearing, *inter alia,* this court said:

"After a careful examination of the authorities upon this point we are constrained to adhere to the conclusion announced in the opinion to the effect that, it being disclosed by the complaint that the certificates of stock were issued as, and appeared on the corporate books to be, fully paid for, it was incumbent upon appellant in this case to allege that respondent was not a holder in good faith, without notice of the fraud charged, since that is a necessary element of the liability of the latter, if any exists, and, therefore, a necessary link in the chain of proof in order that the former may recover."

And the case was remanded to the trial court with instructions to take such further proceedings therein as might appear to be in accordance with justice, including authority to hear and determine appellant's motion to amend his complaint, should one be made within ten days after the filing of the *remittitur.*

42 Idaho—32

Within the time fixed by the decision of this court appellant presented his proposed second amended complaint wherein he alleged that respondent had acquired all of said 17,000 shares of the capital stock of said corporation with full knowledge and notice of the fraud in the issuance thereof and with full knowledge and notice of the manner in which it had been attempted to make said stock fully paid, and with full knowledge and notice of the grossly excessive valuation which had been arbitrarily placed upon the mining property hereinbefore mentioned, in consideration for the conveyance of which said property the stock had been issued.

The second amended complaint corresponds to the amended complaint in all particulars, with the exception that in the second amended complaint the foregoing allegation appears.

To the second amended complaint respondent demurred upon the same grounds as to the amended complaint, except that in subdivision 16 of such demurrer six additional grounds are mentioned which attack the second amended complaint on the ground of uncertainty. This demurrer was sustained by the trial court, upon the grounds, first, that no cause of action was stated; and second, upon all of the grounds of uncertainty contained in subdivision 16 of the demurrer, the first three of which are identical with those urged in the demurrer to the amended complaint.

Upon the failure of the appellant to further amend, a judgment of dismissal was entered. This appeal is from the judgment of dismissal.

Upon the former hearing in this court it was held that the cause of action was not barred by the provisions of C. S., sec. 6630. (*Feehan v. Kendrick, supra.*)

[1] Coming now to the question of whether or not the second amended complaint states a cause of action, in its former opinion this court held that the amended complaint did not state a cause of action for the reason. that it appeared therefrom that the certificates of stock in the mining corporation were issued as and appeared on the corporate books to be fully paid for and that it was incumbent upon the appellant, in order to state a cause of action, to allege

that the respondent was not a holder in good faith without notice of the fraud charged, since such an allegation was a necessary element of the liability, if any existed, against the respondent and a necessary link in the chain of proof in order to entitle appellant to recover. The second amended complaint having been amended in this regard, under the former ruling appellant has stated a cause of action, and said second amended complaint was therefore not subject to demurrer upon that ground.

If appellant is entitled to recover and the second amended complaint states a cause of action, the right of recovery rests upon the personal liability of the respondent as a stockholder, as fixed by the provisions of C. S., sec. 4728 (Rev. Codes, sec. 2745), which in part, provides:

"Each stockholder of a corporation is individually and personally liable for its debts and liabilities to the full amount unpaid upon the par or face value of the stock or shares owned by him.

"Any creditor of the corporation may institute actions against any of its stockholders jointly or severally, and in such action the court must determine the amount unpaid upon the stock held or owned by each defendant, and a several judgment must be entered against him for a sum not exceeding such amount.

"Nothing in this title must be construed to render any stockholder individually or personally liable, as such stockholder, for debts or liabilities of the corporation, either at the suit of a creditor or for assessments or calls, to an amount exceeding the balance unpaid upon his stock or the difference between the amount that has been actually paid upon his stock and the par or face value thereof, except when so liable on the ground of fraud or misrepresentation, or concealment, or for neglect or misconduct as an officer, agent, stockholder or member of the corporation.

"No corporation shall issue any stock as paid up, in whole or in part, or credit any amount, assessment or call as paid upon any of its stock, except for money, property, labor or services, actually received by the corporation, or actually paid upon the indebtedness of the corporation, as provided

in this section, to the full value of the amount credited upon such stock. . . . .

"The liability of such stockholder is determined by the amount of stock or shares owned by him at the time the debt or liability was incurred by the corporation, and such liability is not released or discharged by any subsequent transfer of stock."

The company was incorporated in 1908, and the statute above referred to was in force at that time. It is alleged in the complaint that respondent acquired his stock shortly after the incorporation of the company.

The property taken in exchange for the corporate stock is alleged to have had a value of $500, while the stock delivered for the property had a par value of $1,500,000, of which it is alleged that respondent had actual notice and knowledge when he purchased stock of the par value of $170,000.

In the case of *Kelly v. Fourth of July Min. Co.*, 21 Mont. 291, 69 Am. St. 668, 53 Pac. 959, 42 L. R. A. 621 where a similar question arose, under statutory provisions substantially the same as our own, that court said:

"The complaint substantially averred . . . . that defendant, having taken his shares with the full knowledge that the par value of the stock exchanged for the mining property was grossly in excess of the true value of the property, and having full knowledge of the transaction antecedent to the issuance of the stock, thereby became the holder of unpaid stock. . . . . These allegations were sufficient to permit plaintiff to prove that the stock had not all been paid in. . . . .

"Authority to trustees of corporations to purchase mines . . . . and other property necessary to their business, and issue stock to the amount of the value thereof in payment therefor, which stock so issued shall be declared and taken to be full-paid stock not liable to any further calls, is a specific grant of power to buy any species of property necessary to the business of the company by paying therefor in stock; but, in exercising the authority given, the par value of the stock so issued must be put against the fair value

of the property purchased. The language 'to the amount of the value thereof,' used in section 458 (C. S., sec. 4728—'to the full value of the amount credited upon such stock') means the actual or the fairly estimated value of the property exchanged for the shares of stock delivered in payment. Constructions of the language quoted which permit any valuation to be put upon the property which the parties to the transaction please, and to issue in payment therefor stock of a par value grossly in excess of the true value of the property, we believe to be evasive and erroneous. The statute neither allows a grossly excessive value to be put upon the property sold in order to deliver it over in consideration of a large amount of stock, the par value of which is far in excess of the fair value of the property, nor does it authorize property to be sold at far less than its value, in consideration of payment in stock worth on its face more than the property so acquired actually or fairly estimated is worth."

See, also, *Vermont etc. Co. v. Declez etc. Co.*, 135 Cal. 579, 87 Am. St. 143, 67 Pac. 1057, 56 L. R. A. 728.

[2, 3] The contention of respondent is that if the stock recites upon its face that it is fully paid and nonassessable, it is conclusive, and no personal liability of the stockholder exists. However, this court, in its former opinion, held in effect that a cause of action would be stated by alleging in the complaint that the respondent had actual knowledge of the fact that the par value of the stock had not been fully paid and that the property received in exchange for the stock of the corporation was taken at a gross and excessive valuation, and that such corporate stock would remain unpaid to the extent of the difference between the actual value of the property and the par value of the stock.

In *Wallace v. Manufacturing Co.*, 70 Minn. 321, 68 Am. St. 530, 73 N. W. 189, the supreme court of Minnesota used the following language:

"A certificate for paid-up shares in a corporation is simply a written statement in the name of the corporation that the holder thereof is a stockholder, and that the

full par value of his shares has been paid to the corporation. If the shares in fact have not been so paid for, the certificate that they have been is a false representation that the assets of the corporation have been increased to the amount of the par value of the stock so issued. And, when a corporation represents that it has a paid-up capital of a given amount, it represents to the business world that, at the time it issued the stock, it received money or property to the full par value of its stock. The issuing of the stock of a corporation as paid up when it is not so in fact is a public and a private wrong, . . . . which enables the corporation to obtain credit and property by false pretenses.''

In *Stout v. Hubbell,* 104 Iowa, 499, 73 N. W. 1061, the supreme court of Iowa said:

''For this court has held, as to creditors of a corporation, that when property is received by the corporation, at an excessive valuation, in payment for shares of its capital stock, it is only a payment to the extent of the value of the property received, and that owners of such stock are liable to creditors for the difference between the actual cash value of the property and the face value of the stock.''

[4] As to an original stockholder, the rule would seem to be that whether the payment of an amount in stock for property grossly in excess of its value is fraudulent does not depend upon any fraudulent intent, other than that evidenced by the act of knowingly issuing stock for property to an amount grossly in excess of its value. (*Douglass v. Ireland,* 73 N. Y. 100.) But an assignee of stock issued in payment of property to an amount grossly in excess of its value must have notice of the issuance of such stock for property grossly in excess of its value.

Respondent insists that the trial court properly sustained the demurrer on the ground of uncertainty, in that it does not appear from the second amended complaint from whom respondent purchased his stock in the mining property or how he could be indebted to the company or any creditor in the sum of $22,500, or in the sum of $125,000, or in any sum whatever; nor does it appear how long the stock al-

leged to have been purchased by the respondent was held by him, or when respondent's alleged indebtedness was incurred, or what stock was owned or held by respondent when any indebtedness referred to in the second amended complaint was incurred.

In paragraph 3 of the second amended complaint it is alleged that the defendant purchased 2,000 shares of the capital stock of said corporation some time in the year 1908 or 1909; that on September 27, 1909, he purchased an additional 500 shares, and on December 5, 1909, he purchased 1,000 shares; that on February 4, 1909, he purchased an additional 1,000 shares, and that on June 11, 1910, he purchased 12,500 shares, and that he acquired all of said 17,000 shares of the capital stock of said corporation with full knowledge and notice of the manner in which it had been attempted to make said stock fully paid and with full knowledge and notice of the grossly excessive valuation which had been arbitrarily placed upon the mining property in consideration for the conveyance of which said property the stock had been issued.

[5] Bearing in mind the foregoing allegations, we do not think the complaint in this respect is subject to the demurrer for uncertainty, and particularly in view of the fact that respondent was peculiarly in possession of the knowledge of the dates and amounts of the transfers of stock to him.

[6] It is also insisted that the demurrer was properly sustained to the second amended complaint for the reason that it does not disclose with sufficient certainty when the several debts sued upon were incurred. An examination of paragraph 4 of the second amended complaint discloses not only the rendition of the judgment but sets out in detail the indebtedness constituting the judgment and when it was incurred and for what, with sufficient particularity, and we are of the view that the complaint was not subject to demurrer in this respect.

[7] It is earnestly and ably contended by counsel for respondent that, since this is a mining corporation, the doctrine of liability of stockholders for unpaid subscriptions,

when stock has been issued for property at an overvaluation, is not and should not be made applicable to such mining corporations. Much might be said as to the merit of this contention; however, the statutes of this state make no distinction. An able discussion of this question may be found in *Kelly v. Fourth of July Mining Company, supra,* at page 969. See, also, *Van Cleve v. Berkey,* 143 Mo. 109, 44 S. W. 743; *Gillette v. Chicago Title & Trust Co.,* 230 Ill. 373, 82 N. E. 891; *Garden City Sand Co. v. American Refuse Crematory,* 205 Ill. 42, 68 N. E. 724.

Under Const., art. 11, sec. 9, which provides that "no corporation shall issue stocks or bonds, except for labor done, services performed, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void," and C. S., sec. 4728 (Rev. Codes, sec. 2745), providing that "each stockholder of a corporation is individually and personally liable for its debts and liabilities to the full amount unpaid upon the par or face value of the stock or shares owned by him," and "any creditor of the corporation may institute actions against any of its stockholders jointly or severally, and in such action the court must determine the amount unpaid upon the stock held or owned by each defendant, and a several judgment must be entered against him for a sum not exceeding such amount," both a constitutional and statutory liability is created, and where the complaint alleges facts sufficient to bring a party within and subject to such constitutional and statutory provisions, a cause of action is stated. (*Kelly v. Fourth of July Min. Co., supra.*)

From what has been said it follows that the trial court erred in sustaining the demurrer. The judgment is reversed and the cause remanded with instructions to the trial court to proceed in accordance with the views expressed in the foregoing opinion. Costs awarded to appellant.

William A. Lee, C. J., Wm. E. Lee, and Givens and Taylor, JJ., concur.